**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LACTALIS HERITAGE DAIRY, INC.,

      Plaintiff,

      v.

A&W COLD STORAGE, INC. and JOHN
ALTENBURGH,

      Defendants.

No. 26 C 715

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Lactalis Heritage Diary, Inc. alleges that A&W Cold Storage, Inc. breached a lease agreement (Count I). Lactalis also alleges that A&W's owner, John Altenburgh, is liable for breaching the lease agreement as A&W's alter ego (Count II). Alternatively, Lactalis alleges that Altenburgh tortiously interfered with the lease agreement (Count III). Altenburgh has moved to dismiss Counts II and III for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is denied.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Altenburgh owns a warehouse that he leased to his company A&W. A&W then subleased the warehouse to Lactalis, which is a cheese producer. Lactalis used the warehouse to store its cheese.

Lactalis found rodent droppings in the cheese stored in the warehouse. Lactalis asked A&W to inspect the cheese in the warehouse to confirm the evidence of rodents but A&W refused. A&W soon thereafter demanded that Lactalis remove the remaining cheese from the warehouse because A&W was going out of business. The requests that Lactalis remove its cheese were communicated by Altenburgh.

Altenburgh is the president and registered agent of A&W. He is the only officer or director of A&W. Lactalis alleges that Altenburgh is the sole or majority

2

shareholder of A&W and exercises complete and sole control over A&W's finances, business practices, and decisions.

According to Lactalis, Altenburgh owned two warehouses that he leased to A&W, including the warehouse subleased to Lactalis. Lactalis alleges that he used the warehouses leased to A&W for non-A&W-related purposes, including as the office for his record label, Altenburgh Records. The Altenburgh Records website listed A&W's business phone number as the Altenburgh Records office line. Altenburgh used the same email addresses for his record label and A&W. In his communications with Lactalis relating to the rodent infestation, Altenburgh used several different email addresses, including his personal email address, his A&W email address, a general A&W email address, and an email address associated with his record label. Despite being a registered corporation under Wisconsin law, A&W has repeatedly failed to file an annual report, as mandated by Wisconsin law. According to Lactalis, A&W failed to file such a report in 2021, 2023, and 2025, and filed a perfunctory report in 2024. Lactalis alleged on information and belief that A&W is now insolvent and that A&W was undercapitalized during the course of the parties' relationship.

## Analysis

### I. Breach of Contract

In Count II, Lactalis brings a breach of contract claim against Altenburgh, alleging that he is A&W's alter ego. Illinois law permits alter-ego liability when two separate prongs are met: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and

(2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012). To determine whether alter ego liability is appropriate, Illinois courts consider factors such as: "inadequate capitalization; failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or other entity to creditor detriment; failing to maintain an arm's-length relationship among related entities; and whether the corporation is a mere facade for a dominant owner." *Id.* at 752. But the Seventh Circuit has explained that none is "determinative." *Id.*

Here, Lactalis's allegations plausibly show that A&W is "a mere facade" for Altenburgh primarily because Altenburgh is alleged to have taken an action contrary to A&W's interest. Lactalis alleges that A&W's only assets were the two warehouses leased to it by Altenburgh. A reasonable inference from this allegation is that subleasing these warehouses is A&W's only means of generating revenue. Altenburgh sold at least one of the warehouses before Lactalis's lease term was complete, allegedly because Altenburgh claimed that A&W was bankrupt and going out of business. But this sale of at least half of A&W's assets is plausibly against A&W's interests, and rather was in Altenburgh's personal interests. Altenburgh's alleged decision to take action against A&W's interests plausibly demonstrates that A&W operated as a facade for Altenburgh.

4

Additionally, Altenburgh is alleged to have used the warehouses leased to A&W as office space for his other business. He also used the same phone number and email addresses for both businesses, and did not regularly file annual reports with the state of Wisconsin for A&W. All these allegations taken together plausibly suggest that Altenburgh is A&W's alter ego, and for that reason the motion to dismiss the breach of contract claim against Altenburgh must be denied.

## II.    Tortious Interference

A party to a contract cannot tortiously interfere with that contract. If Altenburgh is A&W's alter ego, then he is a party to the lease and cannot tortiously interfere with it as a matter of law. However, to the extent Altenburgh is found not to be A&W's alter ego, and therefore not a party to the warehouse lease, Lactalis alleges in the alternative that Altenburgh tortiously interfered with the lease.

Altenburgh argues that the tortious interference claim should be dismissed because his conduct is covered by the corporate officer privilege. Under Illinois law, corporate officers and directors are granted "a conditional privilege that protects them from personal liability for their decisions made on behalf of the corporation." *Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1995). "When conduct is privileged, the plaintiff must prove actual malice on the defendant's part to prevail on a tortious interference claim." *Id.* "Malice, in the context of interference with contractual relations cases, simply means that the interference must have been intentional and unjustified." *Id.* In other words, "directors and officers are not justified in acting solely

5

for their own benefit or solely in order to injure the plaintiff because such conduct is contrary to the best interests of the corporation." *Id.*

Here, Altenburgh is entitled to the privilege because he is alleged to be an officer of A&W. However, for the reasons discussed above, Lactalis has plausibly alleged that Altenburgh acted for his own benefit and contrary to the interests of A&W. Thus, Lactalis has plausibly alleged malicious intent on Altenburgh's part.

These allegations also satisfy the elements of a tortious inference claim: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *See HPI Healthcare Services*, 545 N.E.2d at 676. The first two elements are satisfied by the fact that Altenburgh signed the Agreement on behalf of A&W. The allegations of malice satisfy the third and fourth elements. Lastly, Lactalis alleges that the costs relating to A&W's and subsequently Altenburgh's breach of the Agreement caused damages of $2,630,779. R. 1 at ¶71.

## Conclusion

Therefore, Altenburgh's motion to dismiss [15] is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: July 14, 2026

6